[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Connecticut Department of Human Resources ("DHR"), appeals pursuant to secs. 1-21i(d) and 4-183 of the General Statutes the decision of the defendant Freedom of Information Commission ("FOIC") ordering plaintiff to disclose certain information concerning Connecticut's Rental Assistance Program ("RAP") requested by the defendants, The Hartford Courant and its reporter, William Hathaway (collectively, "the Courant").
DHR is a state agency, whose powers and duties concerning human resource development are set forth in sec. 17-571 (formerly sec. 17-31b). The DHR "shall plan, develop, administer, operate, evaluate and provide funding for services for individuals and families served by the department who are in need of personal or economic development." General Statutes sec. 17-571 (b).
Section 8-345 established RAP. This section provides, in part, that the "commissioner of housing shall implement and administer a program of rental assistance for low-income families living in privately-owned rental housing and elderly persons who reside in state-assisted rental housing for the elderly." General Statutes sec. 8-345 (a). "The commissioner [of housing] shall adopt regulations [which] shall establish maximum income eligibility guidelines for such rental assistance and criteria for determining the amount of rental assistance which shall be provided to eligible families and elderly persons." General Statutes sec. 8-345 (e). "The commissioner of housing shall provide emergency rental assistance for AFDC eligible families living in hotels and motels as a component of the program for rental assistance established under section 8-345." General Statutes sec. 8-345a.
RAP is administered by DHR pursuant to an Agreement CT Page 4164 between the Department of Housing ("DOH") and DHR whereby DOH subcontracted to DHR all but that part of RAP which concerns rental assistance to elderly persons. Pursuant to the Agreement, DOH delegated to DHR all responsibilities related to rental assistance for low income families living in privately-owned rental housing and emergency rental assistance for AFDC eligible families living in hotels and motels. Either party may terminate the Agreement with cause upon 60 days' notice.
In June 1990, the Courant requested from DHR, current as of July 1, 1990: (1) An alphabetical listing of all property owners in Connecticut receiving compensation under RAP; (2) the addresses of the RAP properties and the apartment number for which compensation is received; and (3) the amount of compensation (i.e., monthly rent and utilities) paid to each property's owner for each RAP unit or apartment. In a complaint to the FOIC dated July 23, 1990, requesting an FOIC hearing, the Courant claimed it received no formal response to this request, but was denied the requested information during a phone conversation with Commissioner Ginsberg of DHR on grounds that honoring the request would violate federal privacy statutes. The Courant had previously requested the same information from the DOH, which responded that it had "subcontracted all but the elderly component of RAP to the Department of Human Resources," and was forwarding the request to DHR.
The FOIC hearing was held on December 18, 1990 before Joan Fitch, Hearing Officer. At the beginning of the hearing, the Courant withdrew the complaint with respect to the request for specific unit or apartment numbers for which property owners were receiving RAP assistance. The hearing officer issued a report dated March 1, 1991, which was transmitted to the parties as a proposed finding to be considered by the FOIC. The Courant requested clarification of the proposed finding. DHR also requested clarification of and presented exceptions to the proposed finding. These requests and DHR's exceptions were argued before the FOIC at its regular meeting of April 10, 1991. A revised report dated April 10, 1991 was issued by the hearing officer and presented to the parties at the FOIC's April 10, 1991 meeting. The FOIC adopted the hearing officer's revised report as its Final Decision at its meeting of April 10, 1991. Notice of the FOIC's Final Decision is dated April 17, 1991.
In its Final Decision, which sets forth 28 findings of fact and conclusions of law, the FOIC ordered DHR:
 1. Strictly to comply with the disclosure requirements of secs. 1-15 and 1-19 (a).
2. Forthwith to provide the Courant with certified CT Page 4165 copies of the records disclosing the information requested, provided that DHR shall first redact or delete all references to the apartment or unit number for which RAP compensation is received;
 3. To provide the information in the form and sequence maintained by DHR if DHR does not maintain an alphabetical listing of the same; and
 4. To mask, delete or otherwise redact any information which on its face discloses the identity of any RAP tenant, or which directly discloses personally identifiable information about a RAP tenant, or which may in any way disclose the RAP tenant's status as an AFDC recipient.
Facts found by the FOIC pertinent to its conclusions of law and orders include the following:
 1. DHR is a public agency within the meaning of sec. 1-18a(a).
 2. RAP is wholly funded and administered by the State of Connecticut, and the program provides rental assistance to low-income families so that they may reside in privately owned housing units.
 3. The Department of Housing ("DOH") has administrative authority over RAP.
 4. Pursuant to an inter-agency agreement between DOH and DHR, DHR is presently responsible for administering RAP.
 5. The requested information is a public record within the meaning of sec. 1-18a(d).
 6. The Courant is not seeking any information concerning any RAP program recipients, nor disclosure of any personally identifiable information which would directly disclose the identities of RAP recipients or information concerning whether the RAP recipient is also a recipient of Aid to Families with Dependent Children ("AFDC").
 7. DHR maintains records of the requested information in files and a data bank maintained for purposes of determining eligibility in RAP. CT Page 4166
 8. The requested information is not maintained in "personnel or medical files and similar files" within the meaning of sec. 1-19 (b)(2).
 9. DHR failed to demonstrate that the RAP property owners entertained a reasonable expectation of privacy in the information requested.
 10. DHR conceded that some of the requested information is a matter of public record maintained at the tax assessor's office in the municipalities where the properties are located.
 11. DHR conceded that it maintains the only records which indicate which properties throughout the State are RAP properties.
Apparently, as represented by DHR in its brief to this Court, prior to the FOIC Final Decision DHR released to the Courant names of all participating RAP property owners and their monthly compensation amounts, as well as a breakdown of the number of RAP agreements in each town, and RAP tenants' gross incomes, gender and ethnicity. This data which, as the FOIC and Courant note in their briefs, exceeds that requested, complies with the Courant's request for disclosure of a listing of all property owners in Connecticut receiving compensation under RAP, and of the amount of compensation paid to each RAP owner for each RAP unit or apartment.
Accordingly, the issue presented to this Court and so argued by the parties to this appeal concerns only the request and consequent FOIC orders regarding disclosure of the RAP property addresses. A Stay of the FOIC orders, pending further Order of this Court, was ordered (Maloney, J.) on June 17, 1991. Hearing on this appeal, during which no further evidence was offered, took place before this Court on March 26, 1992.
Judicial review of the action of an administrative agency is governed by the Administrative Procedure Act, General Statutes sec. 4-166 et. seq. Appeals from decisions of the FOIC may be taken pursuant to General Statutes secs. 1-21i(d) and4-183.
Section 1-21i(d) provides that "[a]ny party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183." Section4-183 (a) provides that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as CT Page 4167 provided in this section."
"Aggrievement is essentially an issue of standing. Unless a plaintiff can establish that he is aggrieved by a decision of an agency, he has no standing to appeal." Kelly v. Freedom of Information Commission, 221 Conn. 300, 308 (1992) (citations omitted).
The Court finds that DHR is a party aggrieved by the subject FOIC decision for the purpose of standing to take this appeal. See Board of Pardons v. Freedom of Information Commission, 210 Conn. 646 (1989); General Statutes sec.1-21k(b).
The scope of review, however, is limited by sec.4-183.
 [The court] must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. [The court may not] retry the case or substitute its own judgment for that of the [administrative agency]. (Citations and internal quotations marks omitted).
Ottachian v. Freedom of Information Commission, 221 Conn. 393,397 (1992).
The Freedom of Information Act ("FOIA") is set forth in General Statutes sec. 1-7 et. seq. Pursuant to sec. 1-19 (a), except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency are "public records" subject to disclosure.
A state agency "is bound, by General Statutes sec.1-19, to maintain its records as public records available for public inspection unless these records fall within one of the statutory exemptions to disclosure." Maher v. Freedom of Information Commission, 192 Conn. 310, 314-15 (1984). The "general rule is disclosure and . . . exceptions will be narrowly construed." Rose v. Freedom of Information Commission,221 Conn. 217, 233 (1992). The burden of proving the applicability of an exception to such disclosure rests upon the agency claiming CT Page 4168 it. Wilson v. Freedom of Information Commission, 181 Conn. 324,328-29 (1980).
DHR asserts that the RAP property addresses are exempt from disclosure by virtue of General Statutes secs. 17-589 (formerly 17-31a), 17-83 (b) and 1-19 (b)(2), federal regulations, and as an unwarranted intrusion on the right of privacy of RAP tenants. Central to each of these assertions is DHR's claim that approximately 87% of RAP tenants are recipients of assistance under the Aid to Families with Dependent Children ("AFDC") program authorized in Chapter 302 of the General Statutes. Although at the hearing before the FOIC hearing examiner Linda Roache, Program Supervisor, Special Programs Division of DHR, its primary witness, so testified, neither the hearing officer nor the FOIC made any such finding. DHR made no request to the FOIC for clarification on this point.
Section 17-589 (transferred from sec. 17-31u in 1991 after the FOIC Final Decision) is a confidentiality provision respecting DHR clients. The threshold issue is whether this provision exempts DHR from disclosing the subject information.
Section 17-589 reads as follows:
 Sec. 17-589. (Formerly Sec. 17-31u). Protection of client information. Notwithstanding the provisions of section 1-19, the commissioner of human resources, employees of the department of human resources, its service contractors, or employees of such service contractors, shall not disclose personally identifiable information concerning any person applying for, or participating as a client in, any department program or service for which the department contracts, or to which it contributes payments. This section shall not be construed to prohibit the disclosure of any information that is not personally identifiable as to any applicant or client as provided herein. This section shall not be construed as prohibiting the disclosure of any information concerning vendors or service contractors that provide goods or services to any department program or service for which the department contracts, or to which it contributes payments.
It is undisputed that pursuant to the legislative mandate of sec. 8-345, RAP is a DOH program, not a DHR program. CT Page 4169 DHR makes no claim that any specific statutory exemption applies to RAP if administered by the DOH as so mandated. Instead, DHR predicates its claim of sec. 17-589 exemption upon its voluntary assumption of such duty by virtue of the interagency Agreement.
DHR asserts that the privacy afforded by sec. 17-589 encompasses services of DHR not specifically established as a DHR program under the General Statutes. DHR specifically relies on the phrase, "or service for which the department contracts" in sec. 17-589, claiming that rental assistance is a service for which DHR contracts. It argues that the Legislature's intent that sec. 17-589 apply to all department-operated social services regardless of their program origin elsewhere in the law is evidenced by its express inclusion of "services" as well as "department program[s]." Furthermore, DHR argues, its operation of RAP pursuant to the terms of the Agreement between DOH and DHR is wholly consistent with its legislative mandate to assist individuals and families in need of personal development pursuant to sec. 17-571 (formerly sec 17-31b). Relying on Maher v. Freedom of Information Commission, 192 Conn. 310
(1984), DHR argues that although the Courant denies any interest in information pertaining to RAP tenants, such information will be indirectly disclosed in violation of sec. 17-589 if DHR complies with the FOIC order.
The construction urged by DHR ignores the modifying word "department" in the phrase "any department program or service for which the department contracts, or to which it contributes payments." RAP is neither a DHR department program nor a department service. The Legislature assigned RAP to the DOH and in so doing provided no confidentiality provision either for RAP or to the DOH with respect to RAP. Adoption of the construction urged by DHR would mean that programs or agency activities which are otherwise not exempt from public disclosure under the FOIA would become so exempt merely by inter-agency transfer to DHR, or to an agency possessing such an exemption. The policy of disclosure mandated by the FOIA cannot be so summarily thwarted.
The enactment of both the FOIA and the confidentiality provisions of sec. 17-589 antedate the enactment of RAP as embodied in sec. 8-345 et. seq. "[T]he legislature is presumed to exercise its statutory authority with knowledge of existing statutes and with the intention of creating one consistent body of law." Kinney v. State, 213 Conn. 54, 65 (1989). Had the Legislature intended that RAP be a DHR "department program or service," it would have so provided. Instead, it assigned RAP to the DOH, and provided no specific exemption. Section 17-589 is inapplicable. CT Page 4170
The FOIC apparently found it unnecessary to reach this conclusion. Essentially relying on the last two sentences of the section, the FOIC concluded that sec. 17-589 by its express terms was inapplicable in that disclosure of the requested information, as limited by its orders, concerns program vendors or service contractors (i.e., RAP property owners), not program applicants or participants (i.e., RAP tenants), and does not require disclosure of any personally identifiable information regarding RAP tenants. The Court also concurs with this conclusion.
Accordingly, the Court holds that compliance with the FOIC orders is not barred by sec. 17-589. It is therefore unnecessary to consider the Courant's argument that the wholesale transfer of RAP administration from DOH to DHR is itself unauthorized and illegal.
The Court has carefully considered DHR's remaining claims, as set forth in its brief, and determines, as the FOIC so concluded, that they are without merit.
Section 17-83 (b) by its express terms applies only to the Department of Income Maintenance ("DIM") programs and recipients of public assistance under Chapter 302 of the General Statutes. RAP is a DOH program authorized under Chapter 318. The fact that some AFDC recipients may also be RAP recipients does not change this result.
Maher v. Freedom of Information Commission, supra, likewise is inapposite. Maher "pertains uniquely to the requirements of strict confidentiality under sec. 17-83 (b) and the facts of that case." Ottachian v. Freedom of Information Commission, 221 Conn. 393, 401 (1992).
DHR has referenced nothing in the federal regulatory scheme that expressly prohibits disclosure of the information ordered. Moreover, it is undisputed that RAP is wholly funded and administered by the State of Connecticut. Federal law is inapplicable. See Maher, supra, at 192 Conn. 317-18.
Section 1-19 (b)(2) prohibits disclosure of "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." The FOIC concluded that this section was inapplicable. The Court should "accord great deference to the construction given a statute by the agency charged with its construction. Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489, 496
(1986). CT Page 4171
The subject information clearly does not comprise "personnel or medical files." The term "similar files" encompasses "only files similar in nature to personnel or medical files." Hartford v. Freedom of Information Commission,201 Conn. 421, 432 n. 11 (records of police department internal investigation of complaints of police misconduct are not "similar files"). RAP property addresses are certainly less "similar" than the files involved in Hartford. The Court concurs with the FOIC's conclusion.
DHR finally argues that disclosure of RAP property addresses would be an unwarranted invasion of the personal privacy of RAP tenants. It is undisputed that some of the requested information is a matter of public record. By virtue of the data already disclosed, numbers of RAP property addresses are presently ascertainable through a search of various public records, municipal directories and the like. "[A]s a general rule, addresses are publicly available." West Hartford v. Freedom of Information Commission, 218 Conn. 256, 263-64
(1991). In West Hartford, it was conceded that the requested addresses required disclosure of personnel files within the purview of sec. 1-19 (b)(2), inapplicable to this case.
To the extent that this argument focuses on DHR's claim respecting AFDC recipients, it is essentially the same as those hereinabove disposed of. The fact that one occupies a RAP property address does not thereby mean or imply that one is an AFDC recipient. Indeed, DHR's primary witness conceded that DHR could furnish the information requested without identifying directly any AFDC recipient. Moreover, the FOIC orders prohibit such disclosure.
The appeal is dismissed.
DAVID L. FINEBERG, JUDGE, SUPERIOR COURT